J-S43045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ADAM J. LYNN | : | |
| | : | |
| Appellee | : | No. 451 WDA 2020 |

Appeal from the Order Entered March 4, 2020
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001723-2019

BEFORE: SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED FEBRUARY 04, 2021**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Mercer County Court of Common Pleas, which granted the motion *in limine* of Appellee, Adam J. Lynn, to exclude certain evidence at trial.[1] We affirm.

The trial court accurately set forth the facts and procedural history of this appeal as follows:

> Appellee…is charged by way of a Criminal Information filed on November 25, 2019 with the following crimes: Count 1—Aggravated Indecent Assault under 18 Pa.C.S.A. § 3125(b), Count 2—Aggravated Indecent Assault under 18 Pa.C.S.A.

---

[1] The Commonwealth certified in its notice of appeal that the trial court's ruling would substantially handicap the prosecution. **See** Pa.R.A.P. 311(d) (stating: "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").

§ 3125(b), Count 3—Unlawful Contact with Minor under 18 Pa.C.S.A. § 6318(a)(1), and Count 4—Indecent Assault under 18 Pa.C.S.A. § 3126(a)(7). All charges relate to the same alleged victim with the initials T.R. who was between the ages of seven and nine at the time of the alleged crimes. It is alleged that [Appellee] digitally penetrated the alleged victim's vagina without consent; Count 2 alleges the he did so while the alleged victim was unconscious (meaning in this case that she was asleep) or unaware, and Count 4 alleges that [Appellee] put his hand down the inside of the alleged victim's shorts and/or touched her vagina.

[Appellee] pled guilty in 2000 to Aggravated Indecent Assault of a ten-year-old under 18 Pa.C.S.A. § 3125(a)(7) and was sentenced to two to ten years of incarceration.

On December 18, 2019, [Appellee] filed an Omnibus Pre-Trial Motion for Relief including a Motion to Suppress two recorded interviews between [Appellee] and Sergeant Detective Marc-Anthony Adamo of the Sharon, Pennsylvania Police Department. On January 10, 2020, [Appellee] filed a Motion *in Limine* seeking to preclude the Commonwealth from introducing certain evidence at trial, including evidence of the 2000 conviction, the resulting sexual offender registration requirements, and an allusion to the prior conviction by [Appellee] during one or both of the recorded interviews.[1] [Appellee] requested that the Commonwealth be ordered to redact references to said evidence to the extent it is permitted to play the recorded police interviews at trial. A hearing was held on both the omnibus motion and the motion *in limine* on February 4, 2020. The Commonwealth presented testimony from Detective Adamo which was mostly relevant to the suppression issue. The Commonwealth also introduced recordings on a disc of both of the aforementioned police interviews, which took place on July 4, 2019 and July 24, 2019. To allow the [c]ourt to listen to the approximately three hours of combined recordings, the [c]ourt continued the hearing.

[1] [Appellee] stated words to the effect that he would not be alone with children so as to avoid something like this happening again.

On February 11, 2020, the Commonwealth filed its

Notification of Commonwealth's Intention to Present Evidence Pursuant to Pa.R.E. 404(B). This Notice concerned the same evidence that [Appellee] sought to exclude by way of his motion *in limine*. [Appellee] then filed a Second Motion *In Limine* on February 18, 2020 which was more in the nature of a response to the Commonwealth's Notice than a separate motion. The hearing on [Appellee's] motions resumed on March 3, 2020.

On that second day, [Appellee] withdrew his suppression motion.[2] The [c]ourt heard oral argument on the motions *in limine* and the Commonwealth's Notice and then took the matter under advisement. …

> [2] Also, the Commonwealth agreed that evidence of [Appellee's] refusal to undergo a polygraph examination should be excluded at trial.

(Trial Court Opinion, filed May 29, 2020, at 1-3).

In describing the facts underlying Appellee's prior conviction versus the facts of the current case, the trial court explained:

[Appellee] gave a written confession concerning his prior conviction which is included among the materials attached to the Commonwealth's Notice of Intent to present 404(b) evidence. The entire confession reads:

I agreed to allow (the victim) to swim in the deep end of the pool if she did something for me in return. At first I asked of her not to say anything because she should not have been swimming there. Then as we were exiting through the back room of the pool area she consented to allow me to remove her bathing suit. I touched her vagina area and she said she was scared and I told her to put it back on. She did and I exposed my penis to her and asked her to consent to oral sex and she would not. So I allowed her to leave. As she left I apologized to her for upsetting her.

According to the police report, [Appellee] was working as a lifeguard. The victim was a ten-year-old white female. [Appellee]…was 18 years old. The victim had been

- 3 -

swimming with three friends but they left and she was alone. The victim asked [Appellee] if she could swim in the deep end and he said she could but she would "owe him a favor." The area where the illicit touching occurred was in a "utility room." [Appellee] "led" the victim there. The crime occurred during the evening hours (approximately 9:30 p.m.). [Appellee] told the victim to close her eyes before he removed her bathing suit. The victim told [Appellee] to stop after he began touching her "pubic area." When [Appellee] exposed his penis to the victim, he asked her to "suck it like a [lollipop]" or words to that effect. The victim ran away and to her father's home. The date of the offense was May 15, 2000. The victim's older sister knew [Appellee].

The alleged facts of the instant case as related on page 2 of the Affidavit of Probable Cause are as follows:

When asked (during an interview at the Mercer County Children's Advocacy Center) why she was there (the alleged victim) stated because he touched me. When Derek Stotsky (the interviewer) questioned (the alleged victim) about what she meant[,] (the alleged victim) stated that…[Appellee] touched her in her vaginal area on several occasions both at the address located at (redacted) and (redacted). (The alleged victim) stated that the incidents started back in 2017 and continued through into 2018. (The alleged victim) stated that [Appellee] had penetrated her vaginally with his fingers, stating that his [fingers] were…inside of her. (The alleged victim) stated that he would do this while she was lying in bed [asleep] with other children and other family members. When the interview was completed the Mercer County CYS caseworker and (Detective Adamo) made contact with (the alleged victim) and her mother. At this time (the mother) advised that she had caught [Appellee] in their room on two occasions. Both occasions were when they were residing at (redacted). She further advised that she awoke to him ([Appellee]) in the room standing over them as they slept in the bed.

Detective Adamo's recorded interviews of [Appellee] provide further details, including information about the

- 4 -

redacted addresses. [Appellee] explained that he resided at both addresses during different periods along with his girlfriend and his own children. The alleged victim and her mother lived with [Appellee] and his family for a while and they (the alleged victim and her mother) slept together in one room. At least one incident of sexual abuse is alleged to have occurred at that residence. When [Appellee] and his family lived at the other residence, the alleged victim would sometimes come to stay the night. On these occasions she would sleep in a room with [Appellee's] own children. According to [Appellee], this is where any accidental contact with the alleged victim occurred. At least one incident of sexual abuse is alleged to have occurred at that residence.

(*Id.* at 15-16).

On March 4, 2020, the trial court granted Appellee's motion *in limine* as to evidence of the prior conviction, resulting registration requirements, and Appellee's statements alluding to the prior conviction. Nevertheless, the court stated that its order was without prejudice insofar as "the Commonwealth may request that the [c]ourt revisit any of its rulings in light of evidence presented at trial, including especially the possibility that [Appellee] will open the door to the introduction of evidence which this [c]ourt has otherwise ruled inadmissible." (Order, 3/4/20, at 2; R.R. at 135a). The Commonwealth timely filed a notice of appeal on April 1, 2020. That same day, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely complied on April 16, 2020.

The Commonwealth raises the following issues for our review:

Whether the trial court erred in granting Appellee's motion

- 5 -

*in limine* and precluding the Commonwealth from utilizing Appellee's guilty plea of aggravated indecent assault on October 3, 2000 and its factual details pursuant to the notification of Commonwealth's intention to present evidence of other crimes, wrongs, or acts pursuant to Pennsylvania Rule of Evidence 404(b)?

Whether the trial court erred in granting Appellee's motion *in limine* and precluding the Commonwealth from utilizing Appellee's statements made to police officers on July 24, 2019 regarding that fact that he is "very cautious to not be around children without someone else being there so that this cannot happen," referring to the incident underlying [Appellee's] October 3, 2000 aggravated indecent assault guilty plea?

Whether the trial court erred in granting Appellee's motion *in limine* and precluding the Commonwealth from utilizing Appellee's statements made to police officers on July 4, 2019 regarding his [sex offender] registration requirements and compliance?

(Commonwealth's Brief at 5).

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an

- 6 -

examination of the stated reason. ***Commonwealth v. Stephens***, 74 A.3d 1034, 1037 (Pa.Super. 2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." ***Commonwealth v. O'Brien***, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

In its first issue, the Commonwealth argues that Appellee's prior conviction for aggravated indecent assault and the facts underlying that conviction are admissible under Rule 404(b) to show Appellee engaged in a "common plan or scheme." The Commonwealth asserts the facts of this case and the facts surrounding Appellee's 2000 conviction demonstrate acts distinctive and so nearly identical as to become Appellee's "signature." Specifically, the Commonwealth claims the victims in both assaults were approximately the same age, ethnicity, and acquainted with Appellee (as opposed to related) through legitimate initial encounters. In both scenarios, the Commonwealth maintains that Appellee was an authority figure, who digitally penetrated each victim's vagina and manipulated each victim's clothing. The Commonwealth insists the facts of both cases show Appellee has a specific predatory preference toward pre-pubescent, non-relative, white females, over whom Appellee can assert his authority. The Commonwealth submits the facts of both cases reveal Appellee's common plan and scheme to target particular types of victims and perform acts on them for his own sexual gratification.

The Commonwealth also argues the facts of Appellee's prior conviction prove the "absence of mistake" in this case. The Commonwealth asserts that during Appellee's interview with Detective Adamo on July 24, 2019, Appellee admitted that he might have mistakenly touched T.R., but that he did not believe it was in the vaginal area. The Commonwealth insists Appellee might try to proffer this "mistake" defense at trial. The Commonwealth contends the facts surrounding Appellee's prior conviction will demonstrate the improbability that Appellee "mistakenly" touched T.R., in light of Appellee's prior guilty plea to digitally penetrating the vagina of a another minor, female victim. The Commonwealth maintains Appellee has put the "mistake" defense at issue, so the Commonwealth is entitled to prove the absence of any mistake. Relatedly, the Commonwealth submits that Appellee's prior conviction and the facts underlying that conviction are admissible under Rule 404(b) to prove Appellee's intent in this case. The Commonwealth claims Appellee placed his intent at issue when he told Detective Adamo that he might have accidentally touched T.R.

The Commonwealth further stresses that its need to present evidence of Appellee's prior conviction is great because there is no physical evidence, such as a rape kit, to prove T.R.'s allegations. The Commonwealth highlights that no one else witnessed Appellee's alleged assault on T.R., so the Commonwealth's case relies heavily on the testimony of a minor victim. The Commonwealth emphasizes that Appellee tried to discredit T.R. in his

conversations with police by stating T.R. is a drug user and part of a family with a criminal background. The Commonwealth anticipates that Appellee will similarly try to discredit T.R. at trial. The Commonwealth also points out that T.R. delayed reporting Appellee's sexual assault for one year. The Commonwealth suggests that T.R.'s delayed reporting, coupled with the lack of physical evidence and eyewitness testimony, shows the Commonwealth's need to present evidence of Appellee's prior conviction is great.

Although the Commonwealth concedes Appellee's prior conviction is from 2000, the Commonwealth contends that when conducting a remoteness analysis, this Court must exclude the time during which Appellee was incarcerated for the prior conviction. Because Appellee was incarcerated until 2006 for his prior conviction, the Commonwealth submits the prior conviction is only 11 or 12 years old, and not 17 or 18 years old, for purposes of the relevant analysis. The Commonwealth concludes the trial court erred by excluding evidence of Appellee's prior conviction, and this Court must reverse. We disagree.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404.  Character Evidence; Crimes or Other Acts**

\*     \*     \*

**(b)   Crimes, Wrongs or Other Acts.**

*(1)   Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2)    Permitted Uses.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\*    \*    \*

Pa.R.E. 404(b)(1)-(2).

"[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa.Super. 2004) (*en banc*).  Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character."  ***Id.***  Specifically, evidence of other crimes or bad acts is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident.  ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005), *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006).

Importantly, "[w]hile Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. … **To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of**

**the prior bad acts to the crime in question**[.]" *Commonwealth v. Sami*,

___ A.3d ____, 2020 WL 7584956 at *6, 2020 PA Super 294 (Pa.Super. filed

Dec. 22, 2020) (emphasis in original) (internal citations omitted).

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 119 A.3d 353, 358-59 (Pa.Super. 2015) (*en banc*) (quoting *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa.Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008)). *See also Commonwealth v. Weakley*, 972 A.2d 1182 (Pa.Super. 2009), *appeal denied*, 604 Pa. 696, 986 A.2d 150 (2009) (explaining courts must look for similarities in number of factors when comparing methods and circumstances

of separate crimes, including: (1) manner in which crimes were committed; (2) weapons used; (3) ostensible purpose of crime; (4) location; and (5) type of victims).

"The common scheme exception does not require that the two scenarios be identical in **every** respect." *Tyson, supra* at 360 n.3 (emphasis in original) (reversing trial court's exclusion of defendant's prior rape conviction in case charging defendant with rape and related sex offenses; evidence of prior rape conviction was admissible under common plan or scheme exception where facts of prior conviction and facts of current case showed defendant was invited guest in each victim's home, was cognizant of each victim's compromised state, and had vaginal intercourse with each victim while victim was unconscious; differences between incidents concerned details which were not essential to alleged common scheme). Further, although "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Id.* at 359 (quoting *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa.Super. 2010), *appeal denied*, 607 Pa. 694, 4 A.3d 157 (2010)). Time spent incarcerated is excluded from the calculation of elapsed time between crimes. *See Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994); *O'Brien, supra*.

When offered for a legitimate purpose, evidence of prior crimes or bad

acts is admissible if its probative value outweighs its potential for unfair prejudice. **Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657 (2014), *cert. denied*, 574 U.S. 863, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014). "'[U]nfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Id.** at 159, 84 A.3d at 666 (quoting Pa.R.E. 403, *Comment*). Where the Commonwealth seeks to introduce evidence of prior bad acts or other crimes in a case based largely upon circumstantial evidence, admission of such evidence is particularly important. **Weakley, supra** at 1191.

This Court has stated:

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

**Tyson, supra** at 360 (internal citation omitted). "Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. … Jurors are presumed to follow the trial court's instructions." **Hairston, supra** at 160, 84 A.3d at 666.

Instantly, the trial court analyzed the Commonwealth's first issue on appeal as follows:

It is necessary to clarify what exactly [Appellee] stated concerning any accidental contact with the alleged victim. The recording shows that [Appellee] stated that he may have accidentally come into contact with the alleged victim when [Appellee] said goodbye to his own children in the morning before leaving for work. [Appellee's] children slept in close proximity to the alleged victim. However, [Appellee] subsequently denied that any such contact was indecent. This is memorialized in Detective Adamo's Affidavit of Probable Cause on page 3 where it reads: "(a)s the recorded interview progressed [Appellee] continued to make admissions escalating to the point where he stated that he may have inadvertently touched the juvenile victim. [Appellee] eventually made admissions that he inadvertently touched the juvenile victim but didn't believe it was in her genital area."[9] [Appellee] never admitted in either of his lengthy recorded interviews to having touched the alleged victim indecently, meaning touching her genitals or another private area, either accidentally or willfully. [Appellee's] statements do not lend themselves to a defense involving the *mens rea* elements of his alleged crimes. This gravitates against admitting the proffered 404(b) evidence to prove motive, intent, knowledge, lack of consent, absence of mistake or accident, or the other permissible purposes to the extent those purposes relate to [Appellee] having a culpable state of mind. Likewise, the fact that the alleged victim knew [Appellee], and even lived with him for a time, cuts against a defense based on mistaken identity of the perpetrator.

> [9] Although Detective Adamo's Affidavit is accurate as far as what was said, the [c]ourt carefully reviewed the point at which [Appellee] stated that he didn't believe he touched the alleged victim's genitals. The tone is one of denial and not one of ambivalence.

This [c]ourt also considered whether the 404(b) evidence should be admitted to prove the *actus reus* of the alleged crimes, *i.e.*, indecent touching and penetration. In this light, the most relevant permissible purpose for admitting the evidence is to prove a common scheme, plan, or *modus operandi*. For the relevant 404(b) evidence to be admissible for this purpose, there must be such a degree of similarity between [Appellee's] prior conviction and the instant

- 14 -

allegations that the purported commonality is so probative as to outweigh the resulting prejudice. There are some obvious similarities but there are some substantial differences also.

The crimes alleged in the instant case are the same or of the same class as the crime to which [Appellee] pled guilty in the prior case. Thus, both cases involve digital touching/penetration of the victim's vagina. The victims in both cases are white females of approximately the same age (from seven to ten years old). However, the details and circumstances of the two cases are markedly different. In the prior case, [Appellee] chose a victim with whom he had no apparent familial connection. In the instant case, [Appellee] allegedly chose his girlfriend's niece. In the prior case, the *situs* of the crime was a swimming pool apparently open to the public, and then a utility room nearby. In the instant case, the *situs* was allegedly two different residences where [Appellee] lived, and in the case of one of the residences, where the alleged victim lived with her mother for a while. In the prior case, [Appellee] lured the victim to a secluded area. In the instant case, [Appellee] allegedly went to a room where he knew the alleged victim would be along with one or more individuals. In the prior case, [Appellee] exerted his authority over the victim as a lifeguard to induce her into a vulnerable position. In the instant case, it does not appear that [Appellee] spoke to the alleged victim around the time of her alleged victimization. In the prior case, the victim was conscious throughout her interaction with [Appellee]. In the instant case, it is alleged that the victim was asleep during at least some of the time that [Appellee] touched her inappropriately. Also, in the prior case, [Appellee] had barely reached the age of majority. He was approximately 18 years and 7 months old. [Appellee's] one prior case from long ago, involving dissimilar facts, when combined with the instant case, does not amount to a pattern.

* * *

The [c]ourt is concerned that sexual preferences are distinct from a pattern of actions, even if those actions are inspired by said preferences, and admitting evidence to establish sexual preferences would necessarily suggest an improper

inference under Pa.R.E. 404(b)(1) that [Appellee] acted in conformity with his bad character/nature.

This is also relevant to the question of whether the potential prejudicial impact of the Commonwealth's proffered 404(b) evidence would outweigh its probative value. The case law is clear that evidence of prior crimes/acts is not inadmissible merely because the underlying acts are repulsive. However, where the probative value of the evidence is diminished because of remoteness in time or dissimilarity to the crimes/acts being tried, then the inevitable effect on the jury of hearing about such repulsive acts and potentially misapplying the evidence in the way contemplated under 404(b)(1) is comparatively stronger. This is true despite the jury instruction that this [c]ourt would have to give if 404(b) evidence were to be admitted at trial.[10]

> [10] The [c]ourt cannot be clear on what exact form that instruction would take because the Commonwealth is arguing that its proffered 404(b) evidence is admissible under all of the exceptions in Pa.R.E. 404(b)(2).[2]

(Trial Court Opinion at 17-20).

As the trial court acknowledged, the facts of Appellee's prior conviction concerned an isolated incident in the utility room of a public swimming pool, where Appellee was a lifeguard, and while the victim was awake. The facts of the current case involve allegations of multiple offenses over a period of years, in a bedroom the victim shared with others, while the victim was allegedly asleep. Although the facts of this case and those surrounding Appellee's prior conviction share some general commonalities, we cannot agree with the

---

[2] On appeal, the Commonwealth has abandoned its claim that evidence of Appellee's prior conviction is admissible to establish motive.

Commonwealth that the facts are so similar as to be the "signature" of Appellee necessary to satisfy the common plan or scheme exception. ***See Tyson, supra*** at 360 (explaining factual overlap between two incidents must go beyond commission of crimes or conduct "of the same general class" or that defendant's actions are generically common to many sexual assault cases). Even excluding the time Appellee spent incarcerated for the prior conviction, Appellee's prior conviction is still 11 or 12 years old. ***See Rush, supra***.

Additionally, given our deferential standard of review, we accept the trial court's reasoning that the Commonwealth failed to demonstrate the proffered evidence satisfies the intent or absence of mistake exceptions. Although the Commonwealth claims Appellee alleged a mistaken or accidental touching of T.R., the trial court had the opportunity to listen to the approximately three hours of recorded interviews, and it classified Appellee's statements as a denial, rather than an assertion of mistake. Under these circumstances, we cannot say the trial court abused its discretion in excluding evidence of Appellee's prior conviction. ***See Montalvo, supra***; ***O'Brien, supra***. Thus, the Commonwealth's first issue on appeal merits no relief.

In its second issue, the Commonwealth argues that during one of Appellee's interviews, he stated that he is "very cautious to not be around children without someone else being there so that this cannot happen." (Commonwealth's Brief at 31). The Commonwealth asserts this statement

can be reasonably interpreted to mean that Appellee does not stay alone with children, to reduce the likelihood that he will perform an act on a child similar to the act he performed on the victim of his 2000 conviction. The Commonwealth claims Appellee's statement evidences his consciousness of guilt and provides insight into Appellee's mindset and intent to avoid being caught in another situation involving a sex offense against a minor.

The Commonwealth further contends Appellee's statement falls within the "*res gestae*" exception to show the natural development and history of this case. The Commonwealth claims Appellee's statement would allow the "jury to understand the dynamic of Appellee's relationship with the children in [his] household and why it [might] have been inappropriate for T.R.'s mother to observe Appellee in T.R.'s bedroom on at least two occasions." (**Id.** at 33). The Commonwealth maintains Appellee's statement gives the jury a complete story of the case, especially when linked with testimony from T.R.'s mother that she observed Appellee in T.R.'s bedroom. The Commonwealth insists Appellee's statement is not overly prejudicial because it can be interpreted in different ways and is not conclusive evidence of guilt. The Commonwealth concludes the trial court erred by excluding evidence of Appellee's statement to police, and this Court must reverse. We disagree.

"[O]ur courts will allow evidence of prior bad acts where the distinct crime or bad act was part of a chain or sequence of events which formed the history of the case and was part of its natural development."

*Commonwealth v. Drumheller*, 570 Pa. 117, 137, 808 A.2d 893, 905 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003). The "complete story" rationale, also known as the *res gestae* exception, is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa.Super. 2012), *appeal denied*, 619 Pa. 676, 62 A.3d 377 (2013) (internal citation omitted).

"Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact." *Id.* "[T]he history of the *res gestae* exception demonstrates that it is properly invoked when the bad acts are part of the same transaction involving the charged crime." *Id.* at 332. *See also Drumheller, supra* (holding admission of victim's prior protection from abuse petitions against appellant was proper to demonstrate continual and escalating nature of appellant's abuse). "Evidence of prior bad acts may also be introduced to prove consciousness of guilt, *i.e.*, that the defendant was aware of his wrongdoing." *Commonwealth v. Ivy*, 146 A.3d 241, 251 (Pa.Super. 2016).

Instantly, the trial court addressed this issue as follows:

> The Commonwealth argued that [Appellee's] statement that he would not be alone with children because he did not want anything like this to happen again (or similar language) is a subtle indication of [Appellee's] consciousness of guilt. This is illogical in the context of the hours of recorded interviews that the [c]ourt listened to during which [Appellee] maintained that nothing inappropriate happened that could be construed as "this" happening "again." Detective Adamo

- 19 -

did not appear to assign the significance to this statement that the Commonwealth now attributes to it. His Affidavit of Probable Cause does reference the statement on page 3 where it states: "[Appellee] stated that he is never alone with children, not even his own kids because he did [not] want…anything like this to ever happen again." The apparent meaning of the statement is that [Appellee] took steps to avoid being accused or was attempting to convince Detective Adamo that he had [been] and thus is being falsely accused. This [c]ourt might normally allow the Commonwealth to attempt to spin such a statement at trial but the reference to the prior conviction makes the statement inadmissible for the reasons stated above unless [Appellee] opens the door at trial.

(Trial Court Opinion at 21-22). We see no reason to disrupt the court's conclusion that Appellee's statement to Detective Adamo was insufficient to prove Appellee's "consciousness of guilt." **See Ivy, supra**. **See also Montalvo, supra**; **O'Brien, supra**.

Further, we cannot agree with the Commonwealth that Appellee's statement is crucial to providing the jury a "complete story" of the case necessary to satisfy the *res gestae* exception. **See Brown, supra**. Further, given that the statement is subject to multiple interpretations, its prejudicial effect outweighs its probative value. **See id. See also** Pa.R.E. 403 (stating that trial court may exclude relevant evidence if its probative value is outweighed by danger of unfair prejudice, confusing issues, misleading jury, undue delay, wasting time, or needlessly presenting cumulative evidence). Therefore, the Commonwealth's second issue on appeal merits no relief.

In its third issue, the Commonwealth argues Appellee's statements during police interviews concerning his sex offender reporting requirements

are admissible under the *res gestae* exception. The Commonwealth asserts these statements provide the jury with a complete story of the case. Because the reporting requirements arise out of Appellee's 2000 conviction, the Commonwealth contends this evidence goes "hand-in-hand" with evidence of Appellee's prior conviction. The Commonwealth maintains that Appellee's interview with Detective Adamo was premised on Appellee discussing his reporting requirements. Absent admission of such evidence, the Commonwealth claims the jury will not understand the context and pretenses under which Appellee agreed to participate in an interview with police. The Commonwealth again reiterates its earlier arguments about why its need for such evidence is great. The Commonwealth concludes the trial court erred by excluding Appellee's statements regarding his reporting requirements, and this Court should reverse. We disagree.

Initially, we observe that the Commonwealth cites no law to support its position that evidence of a defendant's sex offender registration requirements is admissible under Rule 404(b) or the *res gestae* exception. Likewise, at the March 3, 2020 hearing, the Commonwealth conceded it could not cite any authority regarding admission of a defendant's sex offender reporting requirements in this context. At the hearing, defense counsel argued that Appellee's registration requirements are irrelevant, prejudicial, and do not constitute proper Rule 404(b) evidence because Appellee's reporting requirements are not a "prior bad act" but a "required act" resulting from

Appellee's prior conviction.

Although the Commonwealth argued the applicability of the *res gestae* exception at the hearing, it also conceded that evidence of Appellee's registration requirements "makes more sense if the other two issues that remain do come in" to fulfill "the whole hue of the case and the discussions between Detective Adamo and [Appellee]." (N.T. Hearing, 3/3/20, at 9; R.R. at 58a). Without admission of its other proffered evidence, the Commonwealth admitted that its attempt to introduce evidence of Appellee's registration requirements was the "weakest" of the Commonwealth's proposed Rule 404(b) evidence.

In excluding evidence of Appellee's reporting requirements, the trial court explained that it was unable to uncover any authority to support the Commonwealth's position that Appellee's sex offender registration requirements would be admissible under Rule 404(b)(2). Further, the court continued: "it would be illogical for the [c]ourt to exclude evidence of the underlying conviction but permit evidence of the resulting registration requirements, especially because such evidence would be equally prejudicial." (Trial Court Opinion at 21).

In light of the lack of supporting authority from the Commonwealth, and our decision that the trial court's rulings on the Commonwealth's first two issues did not constitute an abuse of discretion, we see no reason to disturb the court's exclusion of statements about Appellee's sex offender reporting

requirements. **See Montalvo, supra**; **O'Brien, supra**. **See also Commonwealth v. Einhorn**, 911 A.2d 960 (Pa.Super. 2006), *appeal denied*, 591 Pa. 723, 920 A.2d 831 (2007) (reiterating that appellate brief must provide citations to relevant supporting authority; this Court will not become counsel for appellant or consider issues not fully developed in brief).

Further, the record shows that although police were aware of T.R.'s allegations against Appellee, Detective Adamo asked Appellee to come in and follow-up on a recent compliance check concerning Appellee's sex offender registration requirements. Appellee agreed to speak with Detective Adamo, which occurred on July 4, 2019. At that time, Appellee and Detective Adamo discussed Appellee's registration requirements. During the interview, Appellee disclosed that there were other sex offense allegations against him. Police subsequently set up a follow-up interview to discuss T.R.'s allegations against Appellee. While the discussion about Appellee's reporting requirements explains why Appellee initially met with police in this case, we do not see how this discussion is critical to providing the "complete story" in this case necessary to satisfy the *res gestae* exception. **See Brown, supra**. **Compare Drumheller, supra**. In any event, the prejudicial impact of such evidence would far outweigh its probative value. **See Brown, supra**. Thus, the Commonwealth's third issue merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/04/2021</u>